IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION
Case No. 9:20-CV-82236-CANNON/BRANNON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EVELYN SOLOMON, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

The United States moves for summary judgment that Evelyn Solomon is indebted to the United States for penalties imposed under 31 U.S.C. § 5321 for her failure to timely report her interest in or signature authority over foreign bank accounts for the years 2004 – 2010. The Court previously determined that this action was timely and that IRS properly calculated the amount of the penalties. ECF No. 64. The only issue remaining is whether reasonable cause excused Solomon's failure to timely report her foreign bank accounts. It does not. The United States shows this in the incorporated memorandum of law below and the statement of material facts, along with its exhibits, filed with this motion.

**MEMORANDUM OF LAW**

**I.   Evelyn Solomon owes penalties for failing to timely report her foreign bank accounts that at times held over $3 million.**

Evelyn Solomon is a U.S. citizen and retired Montessori school administrator who, for many years, had access to millions of dollars in foreign bank accounts that she did not report to the United States as required by 31 U.S.C. § 5314. Statement of

1

Material Facts (SMF) ¶ 1–7. She is indebted to the United States for penalties imposed, under 31 U.S.C. § 5321, for not reporting her accounts.

Solomon's foreign accounts included accounts in her name as well as trust accounts. She had an account in her name at ABN AMRO in the Netherlands that was open during 2004, 2005, and 2006. SMF¶ 1 – 3. She another account in her name at Clariden Leu in Switzerland during 2004, 2005, 2006, and 2007. SMF¶ 1 – 4. During 2004 – 2010, Solomon also had a reportable account at Bank Leumi in Israel. SMF¶ 1 – 7. This account was in the name Ronald Hagenow, who was Solomon's brother. Solomon also had an interest in accounts at Clariden Leu in Switzerland until 2007. SMF¶ 1 – 4. These accounts were in the names of trusts called the Maurice Trust and the Geis Trust. *Id*. The Geis Trust's Swiss bank account at Clariden Leu had a maximum balance of $1,741,293 in 2007 when it was closed after Ronald Hagenow died. SMF¶ 4 and 8.

Solomon did not report her accounts on an FBAR each year by June 30, as required. Solomon had the accounting firm of Kaufman-Rossin prepare her tax returns during 2004 – 2010. Solomon did not tell Kaufman-Rossin about her foreign bank accounts, nor did she ask them to prepare FBARs to report those accounts until 2015. SMF¶ 9–12. Solomon's income tax returns for 2004 to 2010 suggest—on Schedule B each year—that she did not have any foreign bank accounts. SMF¶ 9. It wasn't until 2015 that Kaufman-Rossin prepared FBARs for Solomon. SMF 12.

Solomon finally reported her accounts in March 2013 when she entered the IRS's 2012 Offshore Voluntary Disclosure Program (OVDP). SMF 26—29. The OVDP was a program that offered taxpayers with undisclosed income from offshore accounts the opportunity to correct their reporting and become current while avoiding criminal prosecution. Participants had to pay their tax deficiencies for 8 years and a single miscellaneous offshore penalty instead of the various tax and FBAR penalties that would otherwise apply. See https://www.irs.gov/newsroom/2012-offshore-voluntary-disclosure-program. Once in the OVDP, Solomon submitted late FBARs and amended tax returns for the years 2004—2010. SMF 28, 29.

The OVDP did not resolve Solomon's noncompliance issues. Solomon did not provide all the information the IRS requested in the OVDP. SMF 15. Nor did she agree to the resolution the IRS proposed. SMF 16. So, the IRS started to remove Solomon from the OVDP. SMF 17. Solomon responded by seeking assistance from the Taxpayer Advocate. SMF 17. The two sides continued to try to negotiate a resolution while the IRS appealed the Taxpayer Advocate's order (TAO). Eventually, the TAO was overruled. SMF 17. Following that the IRS removed Solomon from the OVDP and began an examination. SMF 17. The IRS renewed its requests for documents and interviewed Solomon. But Solomon asserted the Fifth Amendment privilege rather than answer questions about her foreign accounts and provide all the requested documents. SMF 14. Following the examination, the IRS proposed penalties against Solomon for her failure to report her foreign bank accounts.[1] Solomon did not contest the penalties with the IRS Office of Appeals. Instead, she agreed to the penalties by signing Form 13449, Agreement to Assessment and Collection of Penalties under 31 U.S.C. § 5321(a)(5). SMF 19. Solomon has not paid the penalties.

## II.    Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

There is no genuine dispute of any material fact in this case.

---

[1] The IRS also proposed tax deficiencies, which Solomon is contesting in the U.S. Tax Court. *Evelyn Solomon v. C.I.R.*, 12964-20 (T.C.), and *Evelyn Solomon v. C.I.R.*, 20102-19 (T.C.).

### III. Evelyn Solomon did not timely report her interest in or authority over foreign bank accounts for the years 2004 – 2010.

Solomon did not comply with the reporting requirements of 31 U.S.C. § 5314 and its regulations. Citizens of the United States are subject to taxes on their income, no matter where it is earned. 26 U.S.C. § 61(a); 26 C.F.R. § 1.1-1(b). The Currency and Foreign Transactions Reporting Act, also known as the Bank Secrecy Act ("BSA"), was enacted to ensure that citizens meet the requirement to pay taxes on income earned abroad and "to detect and prosecute criminal activity." *See* Pub. L. 91-508, 84 Stat. 1114 (1970) (31 U.S.C. §§ 5311 *et seq.*); *see also* H.R. Rep. No. 91-975 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4395, 4397 (stating that the BSA was enacted to deal with major issues in law enforcement, one of which was the use of secret foreign bank accounts to evade income taxes); *United States v. Simonelli*, 614 F. Supp. 2d 241 (D. Conn. 2008), (*quoting,* 31 U.S.C. § 5311).[2] Congress recognized that citizens' use of undisclosed foreign financial accounts caused significant federal tax losses as well as a gaping disparity in the enforcement of the internal revenue laws. 1970 U.S.C.C.A.N. at 4397–98 (observing that "[s]ecret foreign financial facilities" offered the wealthy a "grossly unfair" but "convenient avenue of tax evasion").

To fill the information gap, the BSA instructs the Secretary of the Treasury to require U.S. citizens "to keep records, file reports," or both, when the citizen "makes a transaction or maintains a relation . . . with a foreign financial agency." 31 U.S.C. § 5314(a). Under that statute, the Secretary published regulations requiring any citizen "having a financial interest in, or signature or other authority over, a bank, securities or other financial account in a foreign country" to report certain details about the account

---

[2] During argument on the motions for partial summary judgment, the Court asked, but counsel for the United States could not provide, specific authority to support the position that an FBAR penalty was not a tax penalty. The *Simonelli* Court determined, in the bankruptcy context, that FBAR penalties are not tax penalties. *Simonelli*, 614 F. Supp. at 247.

to the Treasury Department. 31 C.F.R. § 1010.350(a).[3] During the years 2004–2010, persons with foreign accounts had to report them each year by filing a Form TD F 90–22.1, Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR."[4] *See* 31 C.F.R. § 1010.306(c). An FBAR must be filed with the Treasury Department no later than June 30[5] "with respect to foreign financial accounts exceeding $10,000 maintained during the previous . . . year." *See id.*

The Secretary may impose a civil penalty on any person who does not comply with the requirement to report a foreign bank account. 31 U.S.C. § 5321(a)(5).

A U.S. citizen is subject to penalties under § 5321(a)(5) if:

1. the person had an interest in or authority over a foreign financial account;

2. the financial account had a balance that exceeded $10,000 during the reporting period; and

3. the person failed to report the account on a timely filed FBAR form. *United States v. Hidy*, 471 F. Supp. 3d 927, 932 (D. Neb. 2020); *Jarnagin v. United States*, 134 Fed. Cl. 368, 370 (2017).

Solomon does not dispute that she is a U.S. citizen who had a financial interest in or signature or other authority over foreign financial accounts during the years 2004 – 2010. SMF 1 – 7. Nor does Solomon contest that she did not report those accounts until she entered the OVDP in March 2013, which was well past the reporting deadlines. SMF 21. Accordingly, the IRS imposed penalties for the violations.

Solomon's second affirmative defense is that the United States "has failed to state a claim for which relief can be granted." Solomon has admitted to the elements of the United States' claim. And, this Court has decided that Solomon failed to report her

---

[3] Treasury Regulations applicable to FBAR penalties were in the Code of Federal Regulations Title 31, part 103, until 2010 when they were moved to Title 31, Part 1010. See 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c). For convenience, the most recent location of these regulations is cited.

[4] Beginning with reports for 2013, the form is electronic and called FinCEN Form 114.

[5] The filing deadline was moved to April 15 for reporting years 2016 and later.

accounts and that the IRS properly calculated the amount of the penalty. ECF No. 64. Thus, the Court should strike her second affirmative defense and enter a judgment that she owes the penalties for those violations.

### IV. Evelyn Solomon did not have reasonable cause for her failure to timely report her foreign bank accounts.

Solomon cannot rely on "reasonable cause" as an affirmative defense because there is no evidence that she exercised ordinary business care or that she relied on advice from a competent professional after providing the full details of her situation.

The BSA prevents imposing penalties for non-willful violations if the "violation was due to reasonable cause" and "the amount of the transaction or the balance in the account at the time of the transaction was properly reported." 31 U.S.C. § 5321(a)(5)(B).

The BSA does not define "reasonable cause" in the FBAR reporting context, but courts have used the standards in 26 U.S.C. §§ 6651(a) and 6664(c)(1), 6677(d) and related case law when construing the applicable the standard. *See Jarnagin v. United States*, 134 Fed. Cl. 368, 376 (Fed. Cl. 2017); *United States v. Agrawal*, Case No. 18-C-0504, 2019 WL 6702114 (E.D. Wis. 2019); *see also, Thomas v. UBS AG*, 706 F.3d 846, 851 (7th Cir. 2013) (noting the similarity between 31 U.S.C. § 5321(a)(5)(B)(ii) and 26 U.S.C. § 6664(c)). Solomon bears the burden of proof on a reasonable cause defense. *Calloway v. Comm'r*, 691 F.3d 1315, 1334 (11th Cir. 2012).

In the civil law context, a taxpayer is generally charged with the knowledge of the law, such that ignorance of the law may not be a defense since the taxpayer must take reasonable steps to determine the law and apply it. *Niedringhaus v. Commissioner*, 99 T.C. 202, 222 (1992). Taxpayers must establish that they exercised "ordinary business care and prudence" for their obligation to file FBARs for the years at issue to show reasonable cause under 31 U.S.C. § 5321(a)(5)(B)(ii). *United States v. Boyle*, 469 U.S. 241, 246 (1985); *Jarnagin*, 134 Fed. Cl. at 377. Solomon cannot offer any evidence that she exercised ordinary business care and prudence regarding her foreign account reporting obligations.

A person who does not attempt to learn about her obligations to report her foreign bank accounts or even inform her accountant about those accounts does not have reasonable cause. *United States v. Ott*, 2019 WL 3714491, at *2 (E.D. Mich. Aug. 7, 2019. There is no evidence to suggest that Solomon did either. In fact, her accountant's testimony indicates that she did neither until long after the FBAR due-date. Nor was it reasonable for Solomon to allow her tax returns to be filed without correctly reporting that she had foreign accounts. *Jarnagin*, 134 Fed. Cl. at 378.

Having a tax professional prepare one's tax returns does not necessarily demonstrate reasonable cause either. *Boyle*, 469 U.S. at 250; *Jarnagin*, 134 Fed. Cl. at 378; *United States v. Ott*, 2019 WL 3714491 at *2 (E.D. Mich. 2019). Solomon must show that she provided her tax advisor with the full details of her situation and relied on his advice. *See* 26 C.F.R. § 1.6664-4(c)(1)(i) (advice muse be based on all of the facts and circumstances); *Ott*, 2019 WL 3714491 at *2. At a minimum, Solomon needed to specifically identify her foreign bank accounts to her accountant. *Jarnagin*, 134 Fed. Cl. at 377. But Solomon cannot show that she obtained advice from her accountant or asked for his advice on reporting her foreign accounts.

Although Solomon hired an accountant to prepare her 2004–2010 tax returns, the accountant did not prepare FBAR forms for her until 2015. SMF 9, 12. Solomon's accountant testified in his deposition that the firm prepares FBAR forms for clients when the firm is aware of foreign bank accounts and has done so for at least 20 years. SMF 11.

Solomon has never offered the United States any evidence that she had reasonable cause to not report her foreign bank accounts, even though she has had ample opportunity. The IRS interviewed Solomon about her foreign bank account reporting and tax filings for 2004–2010. SMF 14. During the interview the IRS asked Solomon about professionals she engaged and advice she received about her foreign bank account reporting obligations. Rather than answer the questions, Solomon asserted the Fifth Amendment privilege against self-incrimination to questions about:

    a. investments reported on her tax returns;

      b. whether she had an investment advisor;

      c. records of her foreign bank accounts;

      d. documents for foreign trusts;

      e. documents Solomon submitted to her accountant;

      f. all tax advice received for the years 2004–2016;

      g. foreign tax returns;

      h. the preparation of her tax returns;

      i. whether Solomon disclosed her foreign accounts to her income tax return preparer;

      j. whether Solomon sought professional advice;

      k. her foreign bank account;

      l. foreign trusts;

      m. FBAR filings and requirements.

SMF 14.

Evelyn Solomon was deposed for this case. She testified that she cannot remember whether she ever had foreign bank accounts, much less whether she obtained professional advice regarding those accounts. SMF 22. Julia Solomon is Evelyn Solomon's daughter and guardian. Julia Solomon gave a deposition and could not point to any advice that Solomon received about her foreign bank accounts. SMF 23.

Despite having several foreign bank accounts with millions of dollars, Solomon cannot show that she obtained advice about the reporting of her foreign accounts, much less that she relied on that advice. Her return preparers habitually filed FBARs for clients who informed them of foreign accounts but didn't prepare FBARs for Solomon until well after she ignored the deadline. She did not have reasonable cause for her failure to timely report her foreign bank accounts.

## V. The penalties were properly assessed.

Solomon's fifth affirmative defense is that the "penalties at issue were not properly assessed." The evidence demonstrates otherwise.

Supervisory Revenue Agent Gartman (then Revenue Agent Gartman) recommended the penalties that were assessed against Solomon. ECF No. 18, ¶ 30; *see* IRM 4.26.16.5.4. Acting Group Manager Cary Kochanski approved the penalties in writing on October 29, 2018. ECF No. 18, ¶ 30; *see* IRM 4.26.16.5.6. The IRS notified Solomon of the proposed penalties and Solomon agreed to them on November 17, 2018. ECF No. 18, ¶ 31. The IRS then assessed the penalties on December 12, 2018. ECF No. 18, ¶ 33.

Solomon's fifth affirmative defense should be struck.

## VI. Solomon owes interest and additional penalties on the unpaid balance of the penalties.

The IRS assessed FBAR penalties against Solomon totaling $200,000. Interest accrues on the penalty beginning on the date the IRS sent Solomon notice. 31 U.S.C. § 3717(b). The IRS gave Solomon notice by sending letter 3708 on December 13, 2018. SMF 20. The applicable interest rate for 2018 was 1.0%. *Notice of Rate To Be Used for Federal Debt Collection, and Discount and Rebate Evaluation*, 82 FR 49934-01; 2017 WL 4839313. Interest will accrue at this rate until judgment at which time the rate under 28 U.S.C. § 1961 will apply.

Another penalty charge of 6% is due on claims that are more than 90 days past due. 31 U.S.C. § 3717(e). The IRS gave Solomon notice by sending letter 3708 on December 13, 2018. SMF 20. Solomon has not paid the penalty.

The interest and penalty charge are calculated as simple interest and do not compound. The United States has calculated the total amount owed as of November 29, 2021, to be $241,501.37. The United States requests leave to file a declaration after the Court enters judgment, if necessary, so that it can provide the Court with an accurate calculation of interest and penalty charges as of that date.

## VII. Conclusion

Evelyn Solomon admits that she had foreign bank accounts but did not report them within the time required by the law. Solomon's failure to report her foreign accounts was not due to reasonable cause. Even though she had millions of dollars in several foreign bank accounts over many years, she made no effort to learn about her reporting obligations. Nor did she tell her advisors about her accounts and seek their advice. Thus, she is subject to the penalties under 31 U.S.C. § 5321. The Court should strike Solomon's second and fifth affirmative defenses; rule that Solomon did not have reasonable cause; and enter judgment against Solomon for the penalties the IRS asserted plus statutory interest and failure to pay penalties under 31 U.S.C. § 3717 until the date of judgment; and interest under 28 U.S.C. § 1961 from the date of judgment until it is paid.

Date: November 29, 2021

        DAVID A. HUBBERT
        Deputy Assistant Attorney General

By: **John P. Nasta, Jr.**
    JOHN P. NASTA, JR.
    Fla. Bar No. 1004432
    Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 14198
    Washington, D.C. 20044
    Telephone: (202) 307-6560
    Facsimile: (202) 514-4963
    john.nasta@usdoj.gov

*Of Counsel:*
    JUAN ANTONIO GONZALEZ
    United States Attorney
    Southern District of Florida

*Attorneys for the United States of America*